**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
====================================X
MOSHE NUSSENZWEIG  individually and
on behalf of all others similarly situated


                Plaintiff,

                              1:15-cv-01434-DLI-PK

      -against-


SPECIALIZED LOAN SERVICING, LLC.


                Defendant.

====================================X




### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT


#### INTRODUCTION

This case is brought pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C §1692, et seq. for Defendant's abusive tactics employed in the course of its attempt to collect a consumer debt from Plaintiff. Plaintiff moves pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure for leave to amend his complaint to replead his claims to be sure that they comport with the pleading standards set forth in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016).

In *Spokeo*, the Supreme Court addressed the injury-in-fact requirement for Article III standing. *Spokeo* appears to have broken no new ground. The only change *Spokeo* effected in the standing doctrine was that "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Spokeo,* 136 S. Ct. at 1549.

After the Supreme Court issued its opinion in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) the Second Circuit just held that given the change *Spokeo* effected in the standing doctrine, plaintiffs must get an opportunity to replead their claims to comport with the pleading standards set forth in *Spokeo*, and any standing issues to be addressed must only be addressed after the plaintiffs replead their claims. *See Cruper-Weinmann v. Paris Baguette Am.*, Nos. 14-3709-cv, 15-464-cv, 2016 U.S. App. LEXIS 12012, at *3 (2d Cir. June 30, 2016) ("Given the change *Spokeo* effected in the standing doctrine, we remand to allow plaintiffs an opportunity to replead their claims to comport with the pleading standards set forth in *Spokeo*, and to allow the district courts to address any standing questions in the first instance.")

### ARGUMENT

### A. The Federal Rules of Civil Procedure As Well As Binding Second Circuit Precedent Require Allowance of The Proposed Amended Complaint

The Federal Rules provide that with respect to the amendment of pleadings "[t]he court should freely give leave to allow amendments when justice so requires." Federal R. Civ. P. 15(a)(3). As noted by the U.S. Supreme Court:

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Foman v. Davis,* 378 U.S. 178, 182 (1962)."

In *Cruper-Weinmann v. Paris Baguette Am.* Nos. 14-3709-cv, 15-464-cv, 2016 U.S. App. LEXIS 12012, at *3 (2d Cir. June 30, 2016) the Second Circuit just found:

> "Given the change Spokeo effected in the standing doctrine, we remand to allow plaintiffs an opportunity to replead their claims to comport with the pleading standards set forth in Spokeo, and to allow the district courts to address any standing questions in the first instance."

In light of the Second Circuit's holding that allows plaintiffs an opportunity to replead their claims, Plaintiff has now amended his complaint to comport with the pleading standards set forth in *Spokeo.*

### B. In light of *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016), Plaintiff has established concrete injury sufficient for Article III standing.

Plaintiff alleges defendant violated the FDCPA by not including in its communications certain disclosures required by the Act. Section 1692e of the FDCPA prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt."

3

The statute "provides a non-exhaustive list of conduct that satisfies this general prohibition." That list involves particular types of false or misleading representations from the debt collector. Congress has specifically added to that list that the statute requires debt collectors to disclose their status as debt collectors in each communication and the failure to make that disclosure is deceptive and misleading.

Mr. Nussenzweig suffered a concrete injury in the form of Specialized's misrepresentation as to its status as a debt collector. Congress determined that a debt collector must include said status in all of its communications. With this specific disclosure requirement, Congress determined that the failure to make this disclosure is misleading and harmful to consumers. Plaintiff's inability to obtain this mandatory disclosure was harmful and it was an invasion of Plaintiff's right for truthful and fair debt collection.

Mr. Nussenzweig alleged that Specialized thereby violated his right to truthful information under the FDCPA. *Spokeo* specifically recognized that denial of information is "a sufficient injury in fact to satisfy Article III." 136 S. Ct. at 1549 (citing *Federal Election Comm'n v. Akins,* 524 U.S. 11, 20–25 (1998)). Because Mr. Nussenzweig was the "object of a misrepresentation made unlawful" by the FDCPA, he "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

"[B]oth history and the judgment of Congress," *Spokeo*, 136 S. Ct. at 1549, confirm that Mr. Nussenzweig's injury is sufficiently concrete. It is closely related to the injury arising from deceit, regardless of effect, that was cognizable under colonial-era American law and

that descends from the Statute of Westminster of 1275, *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 267–68 (N.Y. 2009)—a harm, in other words, "that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 136 S. Ct. at 1549.

In addition, as a result of Specialized's misrepresentations, consumers like Mr. Nussenzweig face the risk of tangible harms—harms that Congress, with its "well positioned . . . judgment," meant to "elevat[e] to the status of legally cognizable injuries," *id.*, when it enacted the FDCPA. *See* 15 U.S.C. § 1692(a). This case is illustrative: By misrepresenting its identity, Specialized created a substantial risk that consumers like Mr. Nussenzweig would suffer real-world harm. Specialized's anonymous telephone messages in effect, tricks consumers into calling back and being forced to communicate with the debt collector.

These anonymous messages mislead consumers into thinking that the message could reasonably pertain to a host of issues - including family or medical matters - which are viewed by consumers as much more pressing, than a debt owed. The purpose of these messages is to be vague enough to deceptively provoke the recipient to return the calls in haste. Leaving a message that injuriously entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of harm and abuse the FDCPA intended to prevent. For this reason too, Mr. Nussenzweig has standing.

The Supreme Court in *Spokeo* actually reinforces that in an FDCPA case, it is the mere risk of harm such as deception or the failure to obtain information, subject to disclosure under the FDCPA, that would constitute a sufficient distinct injury to provide standing to sue. *Spokeo,* 136 S. Ct. at 1549–50

*Spokeo* actually reinforces most FDCPA claims, since the FDCPA was designed specifically to stem all debt collection harms. *Hart v. FCI Lender Servs.*, 797 F.3d 219, 226 (2d Cir. 2015) ("[I]n passing the FDCPA, Congress identified abusive collection attempts as [the] primary motivation for the Act's passage.")

*Spokeo* dealt with the Fair Credit Reporting Act of 1970 (FCRA or Act), 15 U. S. C. §1681 et seq., in which Congress required consumer reporting agencies, whenever preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Yet, the Supreme Court in *dicta*, found that a bare procedural violation - that contains no element or risk of harm - cannot satisfy the injury-in-fact requirement of Article III.

The Supreme Court did *not* find that Robins alleged a bare procedural violation that contains no element or risk of harm. Additionally, the Supreme Court did not find that alleging a bare procedural violation would result in a lack of the injury-in-fact requirement of Article III, rather the Supreme Court found that in order for the standing analysis to be complete, a court must address whether the particular procedural violations alleged entail a risk of harm sufficient to meet the concreteness requirement.

The Ninth Circuit found that Robins adequately alleged an injury in fact. Justice Alito, writing on behalf of the majority, noted that the Court took "no position on the correctness of the Ninth Circuit's ultimate conclusion." *Spokeo,* 136 S. Ct. at 1550–51.  The Ninth Circuit's ruling was vacated and remanded for further analysis as to if and how Robins violation of the FCRA contained a risk of harm.

6

*Spokeo* - reaffirming *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) a case where the plaintiffs failure to obtain information subject to disclosure under the FACA was considered sufficient injury to provide standing to sue - found that the violation of a procedural right granted by statute is sufficient to constitute injury in fact.

*Spokeo* found a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. *Spokeo* also cited to *Federal Election Comm'n v. Akins,* 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III)

Congress created the FDCPA since it found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a). Congress enacted the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA" or "Act"), "to eliminate [such] practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."

> "Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To further these ends, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001). As is relevant here, section 1692e of the FDCPA provides generally that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In addition, "[w]ithout limiting the general application of the foregoing," section 1692e proscribes sixteen specific debt collection practices." *Vincent v. Money Store*, 736 F.3d 88, 96 (2d Cir. 2013)

*Spokeo* found that a plaintiff's failure to obtain information subject to disclosure under a federal act was considered sufficient injury to provide standing to sue since in such a case the violation of a procedural right granted by the statute is sufficient to constitute injury, the same rings true when dealing with the FDCPA.

A plaintiff's alleging an FDCPA violation need not allege any additional harm beyond the one Congress has identified such as the statutory right debtors have to be recipients of debt collection that is entirely free of any false, deceptive, or misleading representations. Additionally, the mere fact that a debt collector fails to provide a debtor with the mandatory disclosures that congress instructed debt collectors to provide is a sufficient injury in fact to satisfy Article III. *In Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 U.S. App. LEXIS 6361, at *3 (7th Cir. Apr. 7, 2016) the court found:

> "Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion. Section 1692g(a) also does not have an additional materiality requirement, express or implied. Congress instructed debt collectors to disclose this information to consumers, period, so these validation notices violated § 1692g(a)... In enacting § 1692g(a)(2), Congress determined that a debt collector must include in its § 1692g(a) notice "the name of the creditor to whom the debt is owed." With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize. The undisputed facts show such a failure here. Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough. There is also no need for individual inquiry about the materiality to any given recipient."

Under *Spokeo* a plaintiff in an FDCPA case need not allege any additional harm beyond the one Congress has identified, in fact the violation of the FDCPA alleged in this case is the actual harm and deception anonymous messages concretely cause.

**C.    Whether an injury is sufficiently concrete is guided by historical understanding and congressional purpose.**

To have standing to bring a claim in federal court, the plaintiff must first have suffered an injury in fact. Critically, a court's determination concerning the "merits of the case is a separate inquiry from the threshold issue of Article III standing." *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000); *see also Warth v. Seldin,* 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.")

"The standing requirement is analytically distinct from the merits of the underlying dispute," although the two "may involve overlapping facts, standing is generally an inquiry about the plaintiff: is this the right person to bring this claim." *Davis v. Wells Fargo,* __ F.3d __, 2016 WL 3033938, at *10 (3d Cir. May 27, 2016). When "a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action, 'the proper procedure . . . is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits.' " *Id*.

Turning to the injury-in-fact requirement, a plaintiff must establish that her injury is *both* particularized *and* concrete.[1] In *Spokeo*, the Court reiterated core principles underlying the "concreteness" inquiry, which asks simply whether an injury "actually exist[s]." *Spokeo,*

---

[1] There is no question that Mr. Nussenzweig's injury here is "particularized"—that it "affect[s] [him] in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). Like the plaintiff in *Spokeo*, Mr. Nussenzweig has alleged that Specialized "violated *his* statutory rights" by deceptively misleading—with its anonymous telephone messages to *him*— that the message could reasonably pertain to a host of issues - including family or medical matters - which is more pressing, than a debt owed. These messages deceptively enticed Mr. Nussenzweig to communicate with Specialized when he was caught off guard. *Id*.

136 S. Ct. at 1548. The Court explained that although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id*. at 1549–50. And "[i]n determining whether an intangible harm constitutes injury in fact," the Court continued, "both history and the judgment of Congress play important roles." *Id*. at 1549.

Thus, where the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," the plaintiff will have suffered a concrete injury. *Id*. But such a common law analogue is not required, since Congress also has the power (and is especially "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Id*. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Spokeo,* 136 S. Ct. at 1549. But where a plaintiff's allegations are aligned with the harm that Congress "sought to curb," that plaintiff "need not allege any *additional* harm beyond the one Congress identified." *Id*. at 1549–50.

**E. Specialized's Misrepresentation Denied Mr. Nussenzweig Access to Truthful Information—A Concrete Form Of Informational Injury.**

Applying these principles here leads to one conclusion: Mr. Nussenzweig has sufficiently established concreteness. The informational injury that Specialized inflicted—and the risk of harm it created—is (1) recognized as concrete by Supreme Court precedent, (2) closely related to traditionally actionable harms, and (3) among the evils that Congress targeted when it enacted the FDCPA. Each reason, independently, is a basis for standing here.

10

### D. Supreme Court Precedent—Including Spokeo Itself—Recognizes Informational Injury As A Concrete Injury

Mr. Nussenzweig claims that, by leaving messages without the proper disclosures, Specialized violated the FDCPA by misrepresenting its identity. For purposes of this motion, it is undisputed that the message left for Mr. Nussenzweig did not contain the FDCPA's required disclosures. Mr. Nussenzweig has alleged that the FDCPA governs the message at issue, and thus, alleges he had a right to receive the FDCPA-required disclosures. Thus, Mr. Nussenzweig has sufficiently alleged that he has sustained a concrete—*i.e.*, "real"—injury because he did not receive the allegedly required disclosures. The invasion of Mr. Nussenzweig's right to receive the disclosures is not hypothetical or uncertain; Mr. Nussenzweig did not receive information to which he alleges he was entitled.

While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. See *Spokeo, Inc.*, 578 U.S. at    , 136 S. Ct. at 1549; *Havens Realty Corp.*, 455 U.S. at 373. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Mr. Nussenzweig has sufficiently alleged that he suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

There is no doubt under *Spokeo* and longstanding precedent that Mr. Nussenzweig has sufficiently alleged a cognizable informational injury—the denial of his right to truthful information—for standing purposes.

In *Spokeo*, the Court confirmed that informational injury—being denied access to information to which an individual is entitled by statute—is a concrete injury under Article

III. *See* 136 S. Ct. at 1549–50. And, the Court made clear, the denial of that information is *on its own* sufficiently concrete; "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

In support of this principle, the Court reaffirmed its past precedent, citing *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 449 (1989), which held that the plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act. The inability to obtain such information, the Court explained there, "constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. Similarly, the *Spokeo* Court invoked *Federal Election Commission v. Akins* for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Spokeo,* 136 S. Ct. at 1549–50 (citing *Akins*, 524 U.S. 11, 20–25 (1998)).

Mr. Nussenzweig has suffered that very injury. Under the FDCPA, consumers like Mr. Nussenzweig, have a statutory right to truthful information concerning the debt-collection process. For instance, a debt collector must disclose in all "oral communications with consumers that the communication is from a debt collector." *Id*. § 1692e(11). The harm that Mr. Nussenzweig has alleged is exactly the harm Congress targeted by enacting the FDCPA: false information relating to its role in debt-collection communications. Thus, Mr. Nussenzweig "need not allege any *additional* harm" to satisfy Article III's concreteness requirement. *Spokeo*, 136 S. Ct. at 1549.

The Supreme Court has recognized this form of injury for more than three decades. In *Akins*, the Court held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. at 21. *Akins* in turn cited *Havens Realty Corp. v. Coleman*, in which the Court held that a housing-discrimination "tester" had standing based on a violation of "[his] statutorily created right to truthful housing information." 455 U.S. 363, 374 (1982); *see also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009). A "tester who has been the object of a misrepresentation made unlawful under [the statute]," the Court explained, "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Havens*, 455 U.S. at 373–74.

So too here, Mr. Nussenzweig has shown that he was "the object of a misrepresentation made unlawful under" section 1692e of the FDCPA. *Id.* Indeed, the case for standing is stronger here than in *Havens*; whereas the tester in *Havens* "fully expect[ed] that he would receive false information," *id.*, Mr. Nussenzweig had every reason to believe Specialized's messages pertain to a host of other issues - including family or medical matters - which are  much more pressing, than a debt owed. Accordingly, Mr. Nussenzweig "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.*

**F.   Congress provided Mr. Nussenzweig with a substantive right to receive certain disclosures and Specialized violated that substantive right. This injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA.**

The Eleventh Circuit just addressed this identical issue of Article III standing post *Spokeo* - for a violation of the FDCPA which consisted of not including certain disclosures in

13

its communications as required by the FDCPA. - *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016).

The *Church* case is a directly on point post-*Spokeo* opinion that addresses the standing "injury-in-fact" requirement under the Fair Debt Collection Practices Act (FDCPA). The Eleventh Circuit thoroughly reviewed *Spokeo* and cited to *Havens* for the rule that "[a]n injury-in-fact, as required by Article III, 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .'" *Church*, 2016 WL 3611543, at *3 (citing *Havens*, 455 U.S. at 373).

The Eleventh Circuit also briefly addressed the interplay of substantive versus procedural rights in *Church*. The Eleventh Circuit stated that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Church*, 2016 WL 3611543, at *3

"The [FDCPA] requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. See 15 U.S.C. § 1692e(11); 1692g(a)(1)–(5).1 The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act. See 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . .")". *Church*, 2016 WL 3611543, at *3.

The Eleventh Circuit further noted that the statement in *Spokeo* concerning "bare procedural violations" was not applicable to the allegations at hand [in *Church*], because

14

Congress provided the plaintiff with a "substantive right to receive certain disclosures" and plaintiff [in Church] alleged that defendant violated that substantive right. Similarly, in the case *sub judice*, Congress has provided the same right to Mr. Nussenzweig to receive the required disclosures in communications governed by the FDCPA.

Thus, Mr. Nussenzweig has sufficiently alleged that he has sustained a concrete—i.e., "real"—injury because he did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures was not hypothetical or uncertain; Mr. Nussenzweig did not receive information to which he was entitled. This injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Mr. Nussenzweig has sufficiently alleged that he suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

**G. This case also illustrates the risk of tangible harm from debt-collector misrepresentations—harm that itself supports standing here.**

While a concrete but intangible injury like the denial of truthful information is sufficient to establish Mr. Nussenzweig's standing, his informational injury does not stand alone. Specialized's misrepresentation about its identity in the telephone messages led to other concrete harms—for example, Specialized caused Mr. Nussenzweig to incur charges for Specialized's numerous automated calls utilizing prerecorded voice messages, when Mr. Nussenzweig had no reason to know the communication's purpose.

Specialized was prohibited from placing a call that would cause a charge to Mr. Nussenzweig without having notified him to expect it and without having announced its purpose. Specialized called Mr. Nussenzweig's phone line and Mr. Nussenzweig was charged

a toll on all those incoming calls.  Mr. Nussenzweig was not alerted to the calls beforehand. Mr. Nussenzweig suffered actual economic harm by being subjected to charges due to Specialized's numerous calls.

The said telephone messages are in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(5) and they caused Mr. Nussenzweig actual economic damages. Mr. Nussenzweig suffered injury in fact by being subjected to economically harmful practices by Specialized. *See Horowitz v. GC Servs. Ltd. P'ship,* 2015 U.S. Dist. LEXIS 59878, *21-22 (S.D. Cal. Apr. 28, 2015) ("Horowitz ported the Receiving Number from a landline to Hamby's Verizon Wireless "family" plan with three total lines and 2000 minutes per month." "In particular, "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication" is prohibited, which is "not limited to, collect telephone calls and telegram fees." 15 U.S.C. § 1692f(5)."... [T]he Court finds that Plaintiffs have sufficiently alleged that GCS incurred charges to Plaintiffs' cell phone bill in the form of lost minutes.")

Mr. Nussenzweig suffered actual harm by being the target of  Specialized's misleading and unwanted debt collection communications. Thus, Specialized's FDCPA violation caused Mr. Nussenzweig to suffer a classic form of concrete, "tangible injur[y]": economic harm. *Spokeo*, 136 S. Ct. at 1549. *See also Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *7-8 (N.D.W. Va. June 30, 2016) ("This Court finds that unwanted phone calls cause concrete harm. For consumers with prepaid cell phones or limited-minute plans, unwanted calls cause direct, concrete, monetary injury by depleting limited minutes that the consumer has paid for or by causing the consumer to incur charges for calls.")

**H. The Proposed Amendment Contains Allegations Of Injury In Fact Sufficient To Withstand A 12(b)(6) Motion To Dismiss. Any Anticipated Motion To Dismiss would be Moot *Ab Initio*.**

Federal Rule of Civil Procedure 15(a)(2), provides that "[t]he court should freely give leave [to amend] when justice so requires." "The Second Circuit has held that a motion to amend should be denied 'only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Balentine v. Tremblay,* No. 5:11-cv-196, 2012 U.S. Dist. LEXIS 78024, 2012 WL 1999859, at *3 (D. Vt. June 4, 2012) (quoting *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n.6 (2d Cir. 1987)). Here, the motion to amend does not implicate any of these concerns. The amendments are not unduly prejudicial, as litigation is in its very early stages and the amendments are based on the same facts and claims as the original complaint. There is also no indication of bad faith or undue delay.

As discussed above extensively, the proposed amended complaint is completely sufficient to withstand a 12(b)(6) motion to dismiss for failure to state a claim, and is therefore not futile. See *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

The proposed amendment would not be futile since the complaint states a claim that would survive a motion to dismiss under 12(b)(6). The court should therefore grant Plaintiff's Motion to Amend the Complaint. The proposed amendment contains allegations of injury in fact sufficient to withstand a 12(b)(6) motion to dismiss. Mr. Nussenzweig has established Article III standing and his complaint cannot be dismissed pursuant to Rule 12(b)(6). In granting the motion to amend this court should find that any anticipated Motion to Dismiss as to Article III standing would be a duplicate motion which would be moot *ab initio*.

**CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Amend the Complaint and deny any anticipated Motion to Dismiss as moot *ab initio*.

Dated: Cedarhurst, New York
July 20, 2016

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411